UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KAREN MARIE ADAMS,

                          Plaintiff,

              -against-                                    8:07-cv-0452 (LEK/RFT)

KATHRYN WILSON SMITH, *et al*.,

                          Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

Plaintiff Karen Marie Adams ("Plaintiff") commenced the instant action on April 26, 2007, asserting claims for federal civil rights violations and various state law claims, arising from an alleged conspiracy centered on Plaintiff's property in Keeseville, New York.  See Dkt. Nos. 1; 57 ("Third Amended Complaint").  Presently before the Court are a pair of Motions for summary judgment, filed by Defendants Donald E. Loreman, Sr. and Carolyn Loreman (together, the "Loremans") and by Defendants the Village of Keeseville, New York (the "Village"); Mark J. Whitney ("Whitney"), the former mayor of the Village; and William O'Connor ("O'Connor") and William Seaver ("Seaver"), both former Village employees (together, the "Village Defendants") (collectively, "Defendants").  Dkt. Nos. 297 ("Loremans Motion"); 297-10 ("Loremans Memorandum"); 299 ("Village Motion"); 299-6 ("Village Memorandum").  For the following reasons, Defendants' Motions for summary judgment are granted.

## II.   BACKGROUND

The factual background of Plaintiff's action is wide ranging and has been previously recounted in detail by the Court.  See Dkt. No. 219 ("September 2010 Order") at 2-16.  The Court

therefore only relates herein those facts necessary to the resolution of the present Motions. For a more complete statement of the facts, reference is made to the Court's September 2010 Order and Plaintiff's Third Amended Complaint. Sept. 2010 Order; Third Am. Compl.

Plaintiff's allegations against the Loremans and the Village Defendants relate to a mixed-use, historic building at 1707-1709 Front Street, Keeseville, New York (the "Front Street Property" or, the "Property"). Third Am. Compl. ¶ 23. On February 4, 2003, Plaintiff purchased the Front Street Property from the Loremans. Dkt. Nos. 298 ("Loremans Statement of Material Facts") ¶ 3; 302 ("Plaintiff Response Statement of Material Facts - Loremans") ¶ 3. The Front Street Property had sustained significant fire damage, Dkt. No. 299-5 ("Village Statement of Material Facts") ¶ 11, and Plaintiff purchased the Property with a loan from the Village, intending to renovate it and open it as a bed and breakfast, Third Am. Compl. ¶ 25. The loan was issued through the Village's Revolving Loan Program, a federally funded program intended to provide low-interest loans to promote economic growth and development in the Village. Vill. SMF ¶¶ 13-15. On May 9, 2003, Plaintiff agreed to lease 1709 Front Street to the Loremans for $400 a month. Loremans SMF ¶ 4. The Loremans operated a laundromat from that location. Id.

The total amount of the loan from the Village to Plaintiff was $145,000. Vill. SMF ¶ 16. The purchase price for the Front Street Property was $55,000, and the remaining $90,000 was designated for renovating the Property and would be issued in four draws. Id. ¶ 17. The interest rate on the loan was 3% and would rise to 8.5% if the loan was in default. Id. Plaintiff received the $55,000 and the first draw on the remainder of the loan on February 27, 2003. Id. ¶¶ 19-20. Plaintiff received the remaining draws on the loan on March 5, March 19, and March 26, 2003. Id. ¶ 21.

Plaintiff's first payment on the loan was due June 1, 2003. Id. ¶ 23. Plaintiff, however, did not make her first payment, nor did she make the following payment due July 1, 2003. Dkt. No. 299-9 ("Hathaway Affidavit") ¶¶ 15, 19-20. Plaintiff attempted to make her first payment on July 28, 2003, but the check was returned for insufficient funds. Id. ¶ 21. Plaintiff did not make the payments due on August 1 and September 1, 2003. Id. ¶¶ 21-22. On September 9, 2003, Plaintiff and her attorney appeared at a Village Board meeting and requested a deferral of the loan payments. Vill. SMF ¶ 38. On the same date, Plaintiff made her first payment on the loan. Id. ¶ 39. On September 11, 2003, the Village Board adopted a resolution deferring Plaintiff's loan payments until June 2004, but requiring her to pay taxes and water and sewer fees, and to maintain insurance on the Property. Id. ¶¶ 40-41; Dkt. No. 302 ("Plaintiff Response Statement of Material Facts - Village") ¶¶ 38, 41 (stating that the deferment had been orally agreed to ahead of the September 9 meeting).

Plaintiff was issued a certificate of occupancy for her bed and breakfast in June 2003, and subsequently opened business. Vill. SMF ¶¶ 30-31. The renovations on the Front Street Property were completed by April 1, 2004. Id. ¶ 46. Sometime during this period, the insurance coverage on the Property lapsed. Id. ¶ 43; Pl. Resp. SMF - Vill. ¶ 43. State, county, and local taxes were also delinquent on the Property. Vill. SMF ¶ 44; Pl. Resp. SMF - Vill. ¶ 44. Water and sewer fees on the Property were not current. Hathaway Aff. ¶ 29.

Whitney became Mayor on April 1, 2004, and Plaintiff had discussions with him regarding a restructuring of the loan. Vill. SMF ¶¶ 45, 47-48; Pl. Resp. SMF - Vill. ¶¶ 47-48. Whitney requested certain information regarding Plaintiff's business, but Plaintiff did not provide all of the requested documentation. Vill. SMF ¶¶ 48-49; Pl. Resp. SMF - Vill. ¶¶ 48-49.

Plaintiff's first payment following the deferment period was due June 15, 2004. Vill. SMF

¶ 50. Plaintiff wrote a check dated June 15, 2004, but the check bounced due to insufficient funds. Id. ¶ 51. Plaintiff made three partial payments totaling $1,502.00 in July and August 2004. Id. ¶ 52. The Village did not receive any further payments on Plaintiff's loan. Id. ¶ 57. On December 1, 2004, the Village initiated foreclosure proceedings in State Supreme Court, County of Essex, against Plaintiff for non-payment of her loan. Id. ¶ 58; Dkt. No. 299-30. In a decision and order dated June 15, 2005, the State court granted summary judgment in favor of the Village. Vill. SMF ¶ 62; Dkt. No. 299-31. On September 6, 2005, Plaintiff sold the Front Street Property to Kathryn Smith for $225,000. Vill. SMF ¶ 64. On September 21, 2005, the mortgage and building loan were repaid and a discharge of mortgage was filed. Id. ¶ 66. The Village discontinued the foreclosure action. Hathaway Aff. ¶ 48.

Plaintiff alleges that the Village Defendants and the Loremans conspired to harass Plaintiff to cause her business to fail and cause her to default on her loan. Third Am. Compl. ¶¶ 28, 56, 68. Plaintiff alleges the following activities by Defendants: "failure to make timely payments and draw downs, issuing bogus citations, repeated unnecessary inspections daily, harassing 'show downs' with workers and Plaintiff, slander, theft of services, theft of goods, and failure to uphold agreements." Id. ¶ 28. On May 15, 2003, Plaintiff sent an invoice to the Village for "interference and damages." Vill. SMF ¶ 24.

Plaintiff alleges that O'Connor, the former Village code enforcement officer, visited the work-site daily and harassed Plaintiff and her workers while the renovations were ongoing. Third Am. Compl. ¶ 208. As code enforcement officer, O'Connor inspected properties to ensure compliance with State and local building, fire, and maintenance laws and codes. Dkt. No. 299-7 ("O'Connor Affidavit") ¶ 3. If O'Connor observed a violation, he would first give a verbal warning

to the property owner.  Id.  If the violation was not remedied, a written citation would be issued

requiring the property owner to appear at a hearing.  Id.  Plaintiff asserts that O'Connor issued false

citations in order to harass her, including one on December 15, 2003, for not having a fire escape.

Third Am. Compl. ¶¶ 219-20; see also Dkt. No. 303 ("Plaintiff Exhibits"), Ex. 12.  On other

occasions, O'Connor allegedly called Plaintiff and threatened to "shut (her) down."  Third Am.

Compl. ¶ 210.  Plaintiff alleges that O'Connor had been instructed by Whitney to harass Plaintiff to

cause her to quit her business.  Id. ¶ 212.  O'Connor states that he did inspect Plaintiff's property

and would have noted observed code violations, but states that there is no record of any formal

citations or fines being issued to Plaintiff.  O'Connor Aff. ¶ 5.

     Plaintiff also alleges that her loan payments were misappropriated.  Third Am. Compl. ¶ 60.

Plaintiff contends that payments she intended to make on her loan were instead directed to her water

and sewer bill.  Id. ¶¶ 61-62.  Plaintiff states that she attempted to tender a payment on September

10, 2004, to the Village attorney, but was advised that the payment was late and that the Village

intended to initiate foreclosure proceedings.  Id. ¶ 64.  Finally, Plaintiff claims that Whitney

manipulated the interest rate on her loan following the deferment period.  Id. ¶ 59.

     Plaintiff alleges that the Loremans conspired with the Village Defendants to harass her and

defraud her of the Front Street property.  See id. ¶ 28.  After the sale of the Front Street property

closed, the Loremans continued to occupy 1709 Front Street, from which they operated a

laundromat.  Id. ¶ 27; Loremans SMF ¶ 4.  However, the Loremans refused to sign Plaintiff's lease

or make payments.  Third Am. Compl. ¶ 27.  On May 9, 2003, Plaintiff signed a version of the lease

revised by the Loremans' attorney.  Id. ¶ 29.

     Relations between the parties deteriorated, with each side accusing the other of numerous

breaches of the lease.  See id. ¶ 32; Pl. Exs., Exs. 2, 3; Loremans SMF ¶ 6.  Plaintiff alleges that the

Loremans damaged the Property and refused to pay rent.  See Pl. Exs., Ex. 2.  Plaintiff contends that

the Loremans intended to cause Plaintiff's business to fail in order to regain ownership of the

Property.  Third Am. Compl. ¶ 31.  The Loremans, on the other hand,  assert that they withheld rent

because Plaintiff failed to meet her obligations under the lease.  See Loremans SMF ¶¶ 11-15.

     In March and April 2004, Plaintiff brought actions to evict the Loremans in the Keeseville

Village court before Justice George Head.  Third Am. Compl. ¶¶ 32-33.  Both actions were rejected

for procedural deficiencies.  Id.  Before filing the second action, Plaintiff changed the locks on the

laundromat.  Dkt. No. 297-2 ("Plaintiff Deposition") at 86:2 to 86:6.  The Loremans were out of

town, but their son went to the building and attempted to break in.  Id. at 86:10 to 86:15.  The next

day, Plaintiff was summoned before Justice Head and ordered to give the Loremans' son a key to

the changed lock.  Id. at 87:16 to 88:4.  Plaintiff brought a third eviction action, this time

represented by counsel, in August 2004.  Third Am. Compl. ¶ 34.  Following a three-day trial in

December 2004, Justice Head issued a partial order in Plaintiff's favor, which recommended that the

parties go to arbitration to determine the amount of rent due.  Id. ¶ 38.  Plaintiff's counsel instead

requested a final order from Justice Head on the amount of rent due.  Id.  Justice Head, however,

never issued such an order before his death in June 2007.  Id. ¶¶ 39, 41.  After Justice Head's death,

the Village closed the Keeseville court.  Id. ¶ 41.  Plaintiff has continued to seek a final order, but

the Village has refused to provide a statement that the Keeseville court is closed and her case is still

pending.  Id.

     Plaintiff observed numerous interactions between the Loremans and Village Defendants

which she believes establish a conspiracy to defraud her of the Front Street Property.  Id. ¶ 31.

During the eviction action, Plaintiff observed Whitney in the courtroom passing notes to the Loremans. Id. ¶ 36. Plaintiff also observed Whitney meeting with the Loremans at the back of their laundromat. Id. ¶ 216. Plaintiff states that the Loremans supported Whitney in his campaign for Mayor. Pl. Dep. at 80:11 to 80:16. Plaintiff similarly observed O'Connor talking to the Loremans in the laundromat. Id. at 77:4 to 77:23. Seaver, who rented an apartment from Plaintiff at the Front Street Property, allowed the Loremans onto the Property without Plaintiff's permission. Third Am. Compl. ¶¶ 218, 223. Whitney and Seaver were both present when Plaintiff was summoned to Justice Head's chambers to return a key to the changed lock. Pl. Dep. at 87:23 to 88:1.

Plaintiff refers to comments by the Loremans and Village Defendants that they would "'take the [Front Street Property] off' her hands." Third Am. Compl. ¶ 218. The Loremans repeatedly suggested to Plaintiff that she had "gotten in over (her) head" and offered to "to work something out with the Village to 'take the building back.'" Id. ¶ 28. Plaintiff notes that as she was trying to evict the Loremans, the Village informed Plaintiff's counsel that it intended to foreclose on her and appoint the Loremans as receivers of the building. Id. ¶ 69. A letter written by the Village's attorney indicated that the Village intended to seek an order appointing a receiver and to ask the receiver to continue renting the laundromat to the Loremans, because the laundromat was the only viable business that could pay rent to heat the building in the event of foreclosure. Dkt. No. 299-30 at 70.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will

not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the non-moving party will bear the burden of proof on a specific issue at trial, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. Id. If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact. Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

If the moving party will bear the burden of proof at trial, that party must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. Celotex, 477 U.S. at 331 (Brennan, J., concurring). Such an affirmative showing shifts the burden of production to the party opposing the motion, and requires that party either to produce evidentiary materials that demonstrate the existence of a genuine issue for trial or to submit an affidavit requesting additional time for discovery. Id.

A court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in

reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.  DISCUSSION

The Court's September 2010 Order permitted the following claims to proceed against the Defendants: (1) § 1983 procedural and substantive due process claims; (2) § 1983 conspiracy claims; (3) claims for breach of the implied covenant of good faith and fair dealing; and (4) claims for intentional infliction of emotional distress.  Sept. Order at 38.

Defendants move for summary judgment on Plaintiff's remaining claims on numerous grounds.  The Village Defendants argue that: (1) Plaintiff's causes of action are barred by the statute of limitations; (2) there are no material questions of fact precluding summary judgment on Plaintiff's constitutional and breach of implied covenant of good faith claims; (3) Plaintiff's breach of implied covenant of good faith claim is barred by res judicata; and (4) Whitney, Seaver, and O'Connor are entitled to qualified immunity.  Vill. Mem.  The Loremans argue that there is no issue of material fact precluding summary judgment on Plaintiff's claim that the Loremans conspired with the Village Defendants.  Loremans Mem.  The Court will first address the Village Motion, followed by the Loremans Motion.

### A.  Section 1983 Claims Against Village Defendants

#### 1.  Statute of Limitations

The Village Defendants argue that Plaintiff's cause of action for due process violations pursuant to 42 U.S.C. § 1983 is untimely.  Vill. Mem. at 2.  Because there is no federal statute of limitations applicable to actions brought pursuant to § 1983, courts look to the statute of limitations governing analogous state causes of action.  Bd. of Regents v. Tomanio, 446 U.S. 478, 483-84

9

(1980).  The Second Circuit has accordingly held that § 1983 actions in New York are governed by the three-year personal injury limitations period imposed by N.Y. C.P.L.R. § 214(5).  Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997).  While state law provides the statute of limitations for a § 1983 claim, "[f]ederal law determines when a [§] 1983 cause of action accrues."  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002).  A § 1983 action accrues at "that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action."  Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980) (quoting Bireline v. Seagondollar, 567 F.2d 260, 263 (4th Cir. 1977)) (quotation marks omitted).

Plaintiff filed her Complaint on April 26, 2007.  See Dkt. No. 1.  Therefore, any allegations regarding conduct before April 26, 2004 are untimely, unless Plaintiff can establish that the limitations period did not accrue on those allegations.  It appears that many of the actions of which Plaintiff complains—the interference by the Village Defendants with the renovation of the Front Street property—occurred prior to April 26, 2004.  Indeed, Plaintiff alleges that the Village Defendants' harassment prevented her from making payments on the loan in the summer of 2003.  See Third Am. Compl. ¶ 56.  Plaintiff sent the Village an invoice for "interference and damages" on May 15, 2003, Vill. SMF ¶ 24, and therefore cannot claim that she did not knew of the injuries caused by the Village Defendants at that time.

Plaintiff argues that the violations of her due process rights are on-going, and therefore her due process claims are "current" and not barred by any statute of limitations.  Dkt. No. 302 ("Response") at 6-8.  "The continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.'"  Shomo v. City of N.Y., 579 F.3d 176, 181 (2d Cir. 2009) (quoting Harris v. City of N.Y., 186 F.3d 243, 248 (2d Cir. 1999)).  Under the continuing violation

10

doctrine, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994) (quotation marks omitted). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and unrelated instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Id. at 704. Second Circuit courts "consistently have looked unfavorably on continuing violation arguments . . . and have applied the theory only under compelling circumstances." Blankman v. Cnty. of Nassau, 819 F. Supp. 198, 207 (E.D.N.Y. 1993) (citation and quotation marks omitted). "Characterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as 'a single series of interlocking events' does not postpone accrual of claims based on individual wrongful acts." Singleton, 632 F.2d at 192. Thus, Plaintiff's allegation that the harassment was part of a conspiracy is insufficient to invoke the continuing violation doctrine. Id.; see also Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1156 (2d Cir. 1995) ("[T]he argument that [the plaintiff's] assertion of a conspiracy should serve to delay the time when his causes of action accrue is foreclosed by this Court's decision in [Singleton]."). Therefore, Plaintiff's due process claims premised on conduct occurring before April 26, 2004 are untimely.

The Court notes that it is difficult to determine from the Complaint which allegations are time-barred because many of Plaintiff's allegations are conclusory and do not specify when the wrongful conduct occurred. In any event, even if the Court were to consider the untimely conduct that Plaintiff complains of, Plaintiff has failed to produce evidence to create a material question of fact precluding summary judgment on her due process claims. The Court's analysis of Plaintiff's procedural and substantive due process claims follows.

11

### 2. *Procedural Due Process*

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "To prevail on [a] procedural due process claim, a plaintiff must establish that state action deprived him of a protected property or liberty interest" without constitutionally adequate process. Tuchman v. Connecticut, 185 F. Supp. 2d 169, 173 (D. Conn. 2002) (citing White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061-62 (2d Cir. 1993)). Property interests are not limited by "a few rigid, technical forms." Perry v. Sindermann, 408 U.S. 593, 601 (1972). "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it." Id.

Plaintiff has not clearly articulated the property interest at stake. At one point in her Response, Plaintiff states that "[t]he protected property at issue is the Front Street [P]roperty." Resp. at 7. Elsewhere, Plaintiff states that she was deprived of her property rights because the sale of the Front Street Property "caused her to lose her own business." Id. at 11.

Defendants argue that Plaintiff was not actually deprived of the Front Street Property, because although the Village initiated a foreclosure action, that action was discontinued when Plaintiff sold the Property. Mem. at 5. However, "'deprive' in the due process clause cannot just mean 'destroy.' If the state prevents you from entering your house it deprives you of your property right even if the fee simple remains securely yours." Reed v. Vill. of Shorewood, 704 F.2d 943, 949

12

(7th Cir. 1983). The theory of Plaintiff's due process claim is that the Village Defendants conducted a campaign of harassment to force her into foreclosure and ultimately to sell the Front Street Property. See Resp. at 11; see also Reed, 704 F.2d at 949 ("[I]f it is true . . . that through harassment of customers and employees . . . the defendants destroyed the value of plaintiffs' licensed business . . ., the plaintiffs were deprived of their property right in the business even though the license was never actually revoked.").

Alternatively, Plaintiff claims deprivation of her interest in conducting her business. See Resp. at 11. The Supreme Court has held that while "'[t]he assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a 'deprivation' under the Fourteenth Amendment . . . business in the sense of *the activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense.'" Chrebet v. Cnty. of Nassau, 24 F. Supp. 3d 236, 245 (E.D.N.Y. 2014) (quoting Coll. Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999) (emphasis in original)). Thus, Plaintiff's allegations regarding the loss of her bed and breakfast business do not state a protected property interest for the purposes of her procedural due process claim. See Chrebet, 24 F. Supp. 3d at 245-46; Tuchman, 185 F. Supp. 2d at 174.

Assuming *arguendo* that Plaintiff has identified a protected property interest, Plaintiff has not produced any evidence showing a triable issue of fact as to the deprivation of that interest by the Village Defendants. Plaintiff's theory is that the Village Defendants persistently harassed her to deprive her of the Front Street Property. A pattern of harassment may give rise to a due process claim. See Chalfy v. Turoff, 804 F.2d 20, 22 (2d Cir. 1986) (citing Espanola Way Corp. v. Meyerson, 690 F.2d 827, 829 (11th Cir. 1982)). Plaintiff alleges numerous types of harassment:

13

failure to issue draw downs on her loan, issuance of false citations, unnecessary daily inspections, harassment of Plaintiff's contractors, theft of goods and services, failure to keep agreements, misappropriation of payments, and manipulation of the interest rate on her loan. Third Am. Compl. ¶¶ 28, 59-61. Plaintiff also alleges that the Village Defendants interfered with her attempts to evict the Loremans, thereby depriving her of rent. Id. ¶ 42. The Court in its September 2010 Order found that Plaintiff's allegations were sufficient to state a claim for municipal liability against the Village and claims against the individual Village Defendants. Sept. 2010 Order at 23-24. Plaintiff, however, has not produced evidence to raise her allegations beyond "sheer 'conjecture and speculation,'" sufficient to withstand summary judgment. Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999) (citation omitted).

Plaintiff's allegations are largely conclusory, and lack details of specific actions by the Village Defendants. Plaintiff alleges that the Village Defendants conducted daily harassing inspections and delayed renovations on the Front Street Property, Third Am. Compl. ¶ 28, but has not produced any affidavits substantiating that harassment, or evidence that the renovation was delayed due to the Village Defendants. Nor does the record show the false citations Plaintiff claims: O'Connor states that the Village's files show that no formal citations, fines, or "stop work orders" were ever issued to Plaintiff. O'Connor Aff. ¶ 5. Plaintiff states that she had to go to the Village's offices on numerous occasions to meet with O'Connor. See Pl. Dep. at 222:18 to 223:6. However, she also states that O'Connor would then withdraw any citations and does not believe she ever had to go to court. See id. at 223:1 to 223:19. Plaintiff has produced two appearance tickets, one from November 2, 2003, and the other from January 14, 2004, for not having a fire escape. Pl. Exs., Ex. 12. Plaintiff argues that the fire escape citation is false because O'Connor had earlier approved the

14

fire escape in issuing the certificate of occupancy. Third Am. Compl. ¶ 220. That, however, does not demonstrate that the citation was false. Plaintiff also states that the Village prohibited her from using a hoist vehicle to paint window frames. Dkt. No. 302 ("Plaintiff Affidavit") ¶ 14. However, Plaintiff's own exhibits show the Village later passed a resolution approving Plaintiff's use of a hoist vehicle. Pl. Exs., Ex. 12. Plaintiff's evidence therefore falls far short of establishing the persistent interference by the Village Defendants that Plaintiff alleges.

Moreover, the Village Defendants have produced evidence directly contradicting certain of Plaintiff's allegations. Plaintiff alleges that the Village Defendants did not timely issue draw downs on her loan. Third Am. Compl. ¶ 28. However, Village records show that by March 26, 2003, the Village had issued all draw downs on the loan. Hathaway Aff. ¶¶ 12-13. Plaintiff admits that she received all draw downs but states that she is unable to confirm the dates she received them. Pl. Resp. SMF - Village ¶¶ 21-22. Plaintiff also alleges that the Village Defendants—Whitney in particular—misappropriated her payments. Third Am. Compl. ¶¶ 60-62. However, Plaintiff has not produced evidence of payments made but not credited to her account. Plaintiff alleges, in particular, that she made a cash payment in July 2004 that was never credited to her account. Third Am. Compl. ¶ 61. Village records show that two payments were credited to her account in July 2004. See Dkt. Nos. 299-17; 299-18. Plaintiff's assertion, without supporting evidence, is insufficient to demonstrate that she made a payment that was not credited to her account. Plaintiff further alleges that Whitney manipulated the interest rate on the loan after the deferment period. Third Am. Compl. ¶ 59. However, the terms of the mortgage show that the interest rate would increase from 3% to 8.5% if the loan was in default. Vill. SMF ¶ 18.

Plaintiff's allegation that the Village Defendants impeded her eviction proceedings against

the Loremans is also unsupported. That allegation is based on Plaintiff's observation that Whitney was in the courtroom and passed notes to the Loremans during the proceedings. Third Am. Compl. ¶ 36. However, it is mere conjecture that Whitney was interfering in the proceeding. Lisa's Party City, 185 F.3d at 17. Plaintiff also claims that the Village Defendants have impeded her efforts to obtain a ruling in her eviction action against the Loremans. Third Am. Compl. ¶¶ 41-42. Plaintiff states that she needs a statement from the Village that: (1) the Village court is permanently closed; (2) Justice Head is deceased; and (3) her eviction action is still pending. Id. ¶ 41. Yet Plaintiff has not identified the court she intends to appeal to in order to obtain a final ruling.[1] Plaintiff has produced a series of letters between her and the Village attorney, in which she requested such information and the Village attorney certified that Justice Head is deceased and the Village court is abolished. Third Am. Compl., Ex. C. The certification did not state that Plaintiff's case is still pending. Id. ¶ 42. In any case, there is no allegation that any of the Village Defendants were involved in denying Plaintiff's attempts to obtain the certification regarding her eviction action.

In summary, Plaintiff has not produced any evidence to support her allegations. The Village Defendants, on the other hand, have produced evidence showing that rather than interfering with Plaintiff, the Village issued Plaintiff the draw downs due on her loan, and deferred her payments when she was unable to make them. Vill. SMF ¶¶ 22, 40, 48-49. The Village Defendants have demonstrated that there is no genuine issue of material fact precluding entry of summary judgment

---

[1] New York Village Law § 3-301(2)(a) provides that a village board of trustees may abolish a village court upon the expiration of the then current term of the village justice. The New York Justice Court Manual—which articulates best practices for village courts, developed by the Justice Court Task Force—states that when a village court is dissolved, active cases are transferred to the justice court of the town in which the village is located. N.Y. Justice Court Manual at 86, available at http://www.courts.state.ny.us/courts/townandvillage/FinalJusticeCourtManualforUSCsite.pdf (last updated Jan. 31, 2015).

in their favor. Plaintiff's bare allegations are insufficient to meet her burden on a motion for summary judgment. Matsushita Elec. Indus., 475 U.S. at 586. Accordingly, summary judgment for the Village Defendants on Plaintiff's procedural due process claim is appropriate.

### 3. *Substantive Due Process*

Plaintiff also asserts claims for violations of substantive due process. "Government action might be so arbitrary that it violates substantive due process 'regardless of the fairness of the procedures used.'" Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). In order to make a substantive due process claim, a plaintiff must establish that "(1) the complained-of state action compromised a constitutionally-protected liberty or property right, and (2) the state action that deprived him of that interest was oppressive or arbitrary." JG & PG ex rel. JGill v. Card, No. 08 Civ. 5668, 2009 WL 2986640, at *5 (S.D.N.Y. Sept. 17, 2009). Conduct is arbitrary when it is not merely incorrect, but "shocks the conscience." O'Connor v. Pierson, 426 F.3d 187, 203 (2d Cir. 2005) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)) (quotation marks omitted).

Plaintiff alleges that she was denied substantive due process when she was deprived of her ability to operate her bed and breakfast. "Due process protects the freedom 'to engage in *any* of the common occupations of life.'" Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 632 (2d Cir. 1996) (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923)) (emphasis in original). However, "a substantive due process claim based on infringement of this or similar rights will succeed only where a person is blocked from participating in a particular field." Schultz v. Inc. Vill. of Bellport, No. 08-CV-0930, 2010 WL 3924751, at *7 (E.D.N.Y. Sept. 30, 2010) (citing Conn v. Gabbert, 526 U.S. 286, 291-92 (1999)) (other citations omitted). In this context, "one must have no

ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest." Toussie v. Cnty. of Suffolk, 806 F. Supp. 2d 558, 579 (E.D.N.Y. 2011) (quoting Rodriguez v. Margotta, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999)) (quotation marks omitted); see also Vlahadamis v. Kiernan, 837 F. Supp. 2d 131, 156 (E.D.N.Y. 2011) (holding that plaintiffs had not stated substantive due process claim where they had not "allege[d] that they ha[d] been deprived of the opportunity to participate in the restaurant/bar business altogether").

For the reasons stated *supra*, Plaintiff has not produced evidence creating a genuine issue of material fact as to the Village Defendants' purported interference with her business. Plaintiff necessarily also falls far short of demonstrating that she was completely deprived of her ability to operate a bed and breakfast. See Toussie, 806 F. Supp. 2d at 579-80; see also Schultz, 2010 WL 3924751, at *8 (finding "no evidence that [defendants'] actions, standing alone, directly blocked plaintiff from participating the coffee shop business"). Plaintiff therefore cannot succeed on her substantive due process claim against the Village Defendants and summary judgment on that claim is warranted.

### 4. Conspiracy

Plaintiff alleges a conspiracy between the Village Defendants and the Loremans to deprive her of the Front Street Property. In order to succeed on a § 1983 conspiracy claim, a plaintiff must establish "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)). "[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are

properly dismissed." Id. at 325 (quoting Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993)) (quotation marks omitted). Although a plaintiff can prove a conspiracy through circumstantial evidence, the plaintiff must nonetheless introduce evidence that "the defendants acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds, to violate his rights." Williams v. Cnty. of Nassau, 684 F. Supp. 2d 268, 290 (E.D.N.Y. 2010) (citation and quotation marks omitted).

Plaintiff suggests that the Village Defendants instructed the Loremans not to pay their rent in order to force her into foreclosure. Pl. Dep. at 81:10 to 81:14. In support of her allegation, Plaintiff testified to having observed the individual Village Defendants conversing with the Loremans, and her knowledge that the individual Village Defendants and the Loremans were friends. See id. at 77:4 to 84:21. Plaintiff also notes that the Village commenced foreclosure proceedings and intended to appoint the Loremans as receiver of the building. Id. at 82:16 to 83:7.

Plaintiff's conspiracy claim fails in the first instance because she has shown an underlying violation of her constitutional rights. See Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("[A conspiracy claim] will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."). As discussed *supra*, Plaintiff has not shown a material issue of fact as to whether the Village Defendants violated her due process rights.

Nonetheless, Plaintiff has not presented evidence supporting the existence of a conspiracy. Plaintiff's allegation of a conspiracy is largely based on observed conversations between the Village Defendants and the Loremans. Plaintiff does not know the subject of those conversations, but speculates based on their frequency and apparent connection to other events. Pl. Dep. at 77:20 to 79:1. For instance, Plaintiff suggests that she would observe the Village Defendants conversing

19

with the Loremans in the laundromat, and that subsequently, the Loremans would make comments to her regarding her difficulties with the Village.  See id. at 78:15 to 79:1.  Both O'Connor and Whitney state that any communication between the Loremans and themselves was unrelated to Plaintiff.  O'Connor Aff. ¶ 7; Dkt. No. 299-8 ("Whitney Affidavit") ¶¶ 4, 14.

The mere allegation of communications between the Village Defendants and the Loremans is insufficient to support the inference of a conspiracy.  See Scotto v. Alemanas, 143 F.3d 105, 114-15 (2d Cir. 1998) (holding that telephone calls and communications were insufficient to create inference of conspiracy); see also Schultz, 2010 WL 3924751, at *11 (finding that fact that defendants were discussing plaintiff did not "establish an agreement to inflict an unconstitutional injury"); Fisk v. Letterman, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) ("Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor.").  Plaintiff did not hear any of the conversations between the Village Defendants and the Loremans.  Pl. Dep. at 77:16 to 77:23; 229:6 to 229:13.  Therefore, Plaintiff has only offered speculation that Defendants agreed in their conversations to harass Plaintiff and deprive her of the Front Street Property.

Plaintiff's other allegations are belied by the record.  Plaintiff's only allegation against Seaver is that he let the Loremans onto the premises while he was Plaintiff's tenant.  Third Am. Compl. ¶ 223.  However, the reason Seaver let the Loremans in was to take pictures of ice buildup around the dryer vents on the roof.  Pl. Dep. at 234:2 to 234:5; 236:15 to 236:20.  Moreover, Plaintiff's allegation that the Loremans withheld their rent in order to force her into foreclosure is contradicted by record evidence showing that the Loremans made partial rent payments due to ongoing disputes regarding the condition of the leased property.  See Loremans SMF ¶¶ 10-16.

Furthermore, in the foreclosure proceeding, the reason Village officials wanted the Loremans to continue to operate the laundromat was because they believed that it was the only viable business that could pay rent to continue to heat the building. <u>See</u> Dkt. No. 299-30 at 70.

Accordingly, Plaintiff's allegations regarding a conspiracy between the Village Defendants and the Loremans are insufficient to withstand summary judgment.

### 5. *Municipal Liability*

In order to advance a § 1983 claim against a municipality, a plaintiff must establish that "the unconstitutional deprivation was undertaken pursuant to 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.'" <u>Jeffes v. Barnes</u>, 208 F.3d 49, 57 (2d Cir. 2000) (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978)). A municipal policy may be proved either by the "formally adopted or ratified" decisions of an official policy-making body, or by the actions of an official who, under state law, has "final policymaking authority in the particular area involved." <u>Id.</u> Alternatively, a municipality may be subject to liability for practices, which "[a]lthough not authorized by written law . . . [are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." <u>Monell</u>, 436 U.S. at 691 (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167-68 (1970)) (quotation marks omitted); <u>see also</u> <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 192 (2d Cir. 2007) ("<u>Monell</u>'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates unlawful actions.").

The basis of Plaintiff's claims against the Village is her allegation that the Village

fraudulently made the loan and sought to force Plaintiff into foreclosure in order to re-fund its loan program.  See Third Am. Compl. ¶ 68.  Again, Plaintiff alleges harassment by the Village Defendants, failure to issue draw downs on the loan, misappropriation of payments, manipulation of the interest rate on the loan, and interference with her eviction proceedings against the Loremans.  See id. ¶ 28.  The Court has addressed each of these allegations *supra* and found them unsupported by the record.  Plaintiff has not produced any evidence substantiating a municipal policy or custom of making fraudulent loans and systematically harassing recipients to force them into foreclosure.[2]  Plaintiff also contends that Whitney, the mayor of the Village, ordered Village employees to harass Plaintiff.  See id. ¶ 212.  While allegations against an official with policymaking authority can give rise to municipal liability, Jeffes, 208 F.3d at 57, the Court has already found that Plaintiff's allegations against Whitney are insufficient to withstand summary judgment.[3]  Accordingly, summary judgment is granted on Plaintiff's § 1983 claims against the Village.

**B.  Section 1983 Claims Against the Loremans**

As discussed *supra*, Plaintiff alleges a conspiracy between the Village Defendants and the Loremans to deprive her of the Front Street Property.  "[A] private individual may be subject to § 1983 liability if that individual willfully collaborated with an official state actor in the deprivation of a federal right."  Fisk, 401 F. Supp. 2d at 376 (quotation marks omitted).

The Court has already addressed Plaintiff's allegation of a conspiracy between the Village

---

[2] Plaintiff has introduced evidence that the Loremans and the Village have commenced actions against the subsequent owner of the Front Street Property.  Pl. Exs., Ex. 13.  However, Plaintiff merely notes in conclusory fashion the "the amazing similarity of the actions and contentions by defendants Loreman and Village of Keeseville against that owner."  Pl. Aff. ¶ 15.

[3] Therefore, the Court need not address the scope of Whitney's policymaking authority.

Defendants and the Loremans and found that Plaintiff has not presented sufficient evidence to support an inference that Defendants "reached an understanding" to violate Plaintiff's rights. Scotto, 143 F.3d at 114. Therefore, summary judgment is granted on Plaintiff's § 1983 claims against the Loremans.

### C. State Law Claims

Because the Court has granted Defendants summary judgment on Plaintiff's § 1983 claims, Plaintiff's only remaining claims are state law claims for breach of the covenant of good faith and fair dealing and for intentional infliction of emotional distress. Third Am. Compl. ¶¶ 234, 237. Federal district courts are "courts of limited jurisdiction," Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005), only having original subject matter jurisdiction over cases in which there is a federal question, see 28 U.S.C. § 1331, or in which there is complete diversity of citizenship between the parties, see 28 U.S.C. § 1332. A federal court has an independent obligation to determine if it has subject matter jurisdiction and may raise the issue *sua sponte*. See FED. R. CIV. P. 12(h)(3); see also Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 740 (1976).

Having granted summary judgment on Plaintiff's sole federal cause of action against Defendants, there is no federal question remaining in the case. Moreover, there is no diversity of citizenship between Plaintiff and Defendants. See Third Am. Compl. ¶¶ 4-8. Therefore, it appears that the Court no longer possesses subject matter jurisdiction over this action. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and

23

comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988)); see also Marcus v. Am. Tel. & Tel. Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants Carolyn Loreman and Donald E. Loreman, Sr.'s Motion (Dkt. No. 297) for summary judgment is **GRANTED** with respect to Plaintiff's § 1983 claims; and it is further

**ORDERED**, that Defendants William O'Connor, William Seaver, Mark J. Whitney, and the Village of Keeseville's Motion (Dkt. No. 299) for summary judgment is **GRANTED** with respect to Plaintiff's § 1983 claims; and it is further

**ORDERED**, that Plaintiff's state law claims for the breach of the covenant of good faith and fair dealing and the intentional infliction of emotional distress are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    July 09, 2015
          Albany, NY


Lawrence E. Kahn
U.S. District Judge